IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JASON WILLIAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   CIVIL NO. 07-811-GPM |
| | ) |
| **ROGER E. WALKER, JR., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Jason Williams (Plaintiff) filed this action pursuant to 28 U.S.C. § 1983 claiming that Defendants—staff members and correctional officers at the Menard Correctional Center (Menard)—failed to protect him from his cell mate's attacks, in violation of his Eighth Amendment right to be free from cruel and unusual punishment; and, in violation of the First Amendment, deliberately assigned him to share a cell with a known aggressive inmate in retaliation for Plaintiff's numerous earlier filed grievances and lawsuits. Now before the Court is the Report and Recommendation of Magistrate Judge Donald G. Wilkerson (Doc 76), recommending the Court find that Plaintiff exhausted his administrative remedies as to Defendant Richard Moore only, but that he did not exhaust his remedies as to any other Defendant as required under 42 U.S.C. § 1997e(a). Plaintiff timely objected to the Report and Recommendation (Doc. 81), and Defendants chose not to respond.

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b);

Page 1 of 7

*Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court "may accept, reject or modify the magistrate judge's recommended decision." *Harper*, 824 F. Supp. at 788. In making this determination, the Court must look at all of the evidence contained in the record and "give 'fresh consideration to those issues to which specific objections have been made.'" *Id.*, *quoting* 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part). However, where no timely or specific objections to the Report and Recommendation are made, pursuant to 28 U.S.C. § 636(b), this Court need not conduct a *de novo* review of the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

In their Answers to Plaintiff's Complaint, each Defendant raised the affirmative defense that Plaintiff failed to exhaust his administrative remedies before filing suit, in violation of 42 U.S.C. § 1997e(a) (Docs. 21 and 31). Later, in two separate Motions for Summary Judgment, Defendants conceded that Plaintiff exhausted his administrative remedies as to Defendant Moore, but argued that he did not exhaust as to any other Defendant (Docs. 22 and 32). Because exhaustion was raised as an affirmative defense, Magistrate Judge Wilkerson conducted a hearing to take evidence on this issue pursuant to the Seventh Circuit Court of Appeals' opinion in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). After the *Pavey* hearing, Magistrate Judge Wilkerson provided this Court with his Report and Recommendation (Doc. 76).

Magistrate Judge Wilkerson's Report and Recommendation makes clear that whether Plaintiff exhausted his administrative remedies as to all of the Defendants, (other than Defendant Moore), primarily hinges on whether Plaintiff filed one or two grievances on January 12, 2006. Plaintiff, of course, alleges that he submitted two grievances on January 12, 2006, and that the latter, more extensive grievance—which named all of the Defendants—was either lost or ignored by

Menard staff. Plaintiff further claims that, by submitting this second grievance, he did everything in his power to exhaust his remedies as to all of the named Defendants. The evidentiary support for Plaintiff's contentions, however, is extremely sparse.

For example, Plaintiff attached only one grievance dated January 12, 2006, to his original Complaint (*see* Doc. 1, Ex. 1). In the one and only grievance he submitted in this action, Plaintiff makes the following claim:

> I have repeatedly told numerous members of Menard staff that me and Darryl Montgomerry are enemies.… I even told Major Moore of the North 2 segregation unit. I am a low aggressive prisoner (my aggression level is a Low 3) and inmate Montgomery is highly aggressive and violent.… He has beaten me up Numerous times and has even taken my Food trays [sic].…

(Doc. 22, Ex. B) Defendant Moore is the only Defendant specifically named in this grievance. Moreover, this is the only grievance that Plaintiff appealed to the Administrative Review Board (ARB), at least, according to Defendants' records (*see* Doc. 22, Ex. A, affidavit of Melody Ford, Chairperson for the ARB in the Office of Inmate Issues, in the Illinois Department of Corrections (IDOC) since 2201). Indeed, Defendants have no record of a second grievance filed on January 12, 2006, and they claim that such a grievance was never received by the IDOC ( Doc. 74, p. 5).

In his objections to the Report and Recommendation Plaintiff claims that "[t]he second and longer 1-12-06 grievance was in fact written first" (Doc. 81, p. 4). Further, Plaintiff alleges that he only needs to show that he timely mailed both grievances to the appropriate prison staff, and that his "numerous sworn statements that 1-12-06 grievances were timely filed, in same envelope [sic], … must be taken as true" (*Id.* at pp. 1 and 5). Plaintiff cites a number of relevant cases that generally support his assertions. However, in the end, these cases are distinguishable and Plaintiff's arguments fall short.

Under the Prisoner Litigation Reform Act (PLRA), prior to filing a civil action, an inmate must first exhaust "such administrative remedies as are available.…" 42 U.S.C. § 1997e(a). The availability of a remedy depends on whether the grievance process, in reality, "was open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx 10, 13, 2009 WL 330531 (7th Cir. 2009), *citing Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). An administrative remedy is unavailable if, for example, the proper forms are not provided to an inmate, an inmate is threatened with violence for attempting to use the administrative process, prison officials fail to respond to a properly submitted grievance, or engage in affirmative misconduct that prevents exhaustion. *Id.* (Citations omitted). However, "so long as the administrative authority has the ability to take *some* action in response to the complaint (even if not the requested action), an administrative remedy is still 'available' under the PLRA." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), *quoting Booth v. Churner*, 532 U.S. 731, 741 (2001). Further, to successfully exhaust an administrative remedy, a prisoner must strictly comply with and "properly use the prison's grievance process." *Id.* Finally, because failure to exhaust is an affirmative defense, it is the Defendant's burden to show that Plaintiff failed to exhaust an available remedy. *See Jones v. Bock*, 549 U.S. 199, 212 (2008); *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir.) *cert. denied*, --- U.S. ---, 129 S. Ct. 417 (2008).

Here, Defendants have met their burden of proving that Plaintiff failed to exhaust available remedies because Defendants did, in fact, process a grievance submitted by Plaintiff on January 12, 2006. As such, the administrative process clearly was available. In the grievance that was received and processed, plaintiff simply failed to adequately identify all of the Defendants, with the exception of Defendant Moore. Plaintiff claims that he submitted an additional grievance as an exhibit or an attachment to his January 12, 2006 grievance. However, as will be discussed in greater detail below, the evidence surrounding this second January 12, 2006 grievance is sparse and questionable.

Plaintiff makes at least two dubious factual arguments to support his argument that he exhausted all available administrative remedies. First, Plaintiff claims that "[he] would have no reason to falsely manufacture 1-12-06 grievance I claimed was an exhibit to 1-12-06 grievance originally permitted" (*Id.*). To the contrary, Plaintiff is a seasoned litigant who is familiar with the requirement that prisoner litigants must first exhaust their administrative remedies (*see e.g.*, Doc. 74, p. 7). Indeed, between his two law suits in front of this Court, Plaintiff references over ten grievances that he has filed during approximately the same number of years of being incarcerated. As such, as soon as Defendants raised the affirmative defense of exhaustion in their Answers (in December 2008 and March 2009), Plaintiff may have realized his problem and thus, attached the second, unprocessed grievance.

Indeed, it was not until August 14, 2009, that Plaintiff first submitted the so-called second January 12, 2006 grievance to the Magistrate Judge (Doc. 76, p. 3). As the Magistrate Judge noted, this second grievance "does not contain a counselor's response or any indication that it was received by a counselor, grievance officer, or Department of Corrections employee" (*Id.*). To shore up support for the alleged existence of a second January 12, 2006 grievance, Plaintiff filed a copy of another grievance dated September 26, 2006, in which he referred to two grievances filed on January 12, 2006 (Doc. 73-5, p. 1). However, the September 26, 2006 grievance also does not contain a counselor's response nor does it contain any indication that it was received by prison officials.

By contrast, many of Plaintiff's other grievances were stamped "Received" by the Office of Inmate Issues (*see e.g.*, Doc. 48-2, pp. 43-53; Doc. 48-4, pp. 62-70). The Court finds it suspicious that neither Plaintiff's alleged second January 12, 2006 grievance, nor his September 26, 2006 grievance—the only other grievance referencing the second January 2006 grievance—were ever received or processed; especially when considering that most of the other grievances referenced by

Plaintiff bear a date stamp "Received" by the Office of Inmate Issues. As a result, Plaintiff, at best, has put forth extremely tenuous evidence regarding the origins of the second January 12, 2006 grievance.

Further, other than Plaintiff's sworn statements, there is no evidence to support that this grievance was ever submitted, received or processed. Plaintiff claims that he has "shown that [he has] always made the claim that there was and is two 1-12-06 grievances which were submitted in this case in January case" (Doc. 81, p. 8). As this Court already noted, however, Plaintiff did not attach a copy of a second January 12, 2006 grievance when he first filed his Complaint on November 20, 2007. If that second grievance did in fact exist; and it was longer, more detailed, and meant to be an "exhibit" to the other January 12, 2006 grievance, then why would Plaintiff fail to attach it to his Complaint? The Court finds Plaintiff's omission, in this respect, irreconcilable with his allegations that he has "always made the claim that there was and is two 1-12-06 grievances."[1]

In sum, the question of exhaustion as to all of the Defendants except for Defendant Moore, hinges on the existence of a second Jan 12, 2006, which has turned into a factual dispute over (1) its existence and origins in the first instance and (2) whether it was ever properly submitted through the grievance process. When viewing the facts in a light most favorable to Plaintiff and drawing all reasonable inferences in his favor, this Court is willing to concede that the second January 12, 2006 existed prior to this action being initiated. However, regarding the second point above, it simply is not reasonable to infer that the prison officials would process one grievance and not the other when

---

[1] However, this second grievance was filed in Plaintiff's earlier case (Civil No. 02-1177-GPM) on April 13, 2007, and, as such, apparently it existed prior to the filing of this lawsuit. While this demonstrates that the second grievance was not fabricated solely for the purpose of this lawsuit, it does not help verify the authenticity of the document or whether the grievance was, in fact, ever submitted. At bottom, the mere existence of the second grievance prior to Plaintiff filing this lawsuit is not dispositive of the issue of exhaustion now before the Court.

both were allegedly submitted in the same envelope. Defendants have searched their records and have found no evidence that a second grievance was ever submitted (*see* Doc. 22, Ex. A). The Plaintiff's delay in bringing the second grievance to the Court's attention further adds to the likelihood that it was, in fact, never submitted. Thus, when viewing the evidence as a whole, in a light most favorable to Plaintiff, the Court agrees with the Magistrate Judge that "[t]his chain of evidentiary support is so tenuous that it defies credibility" (R&R, Doc. 76, p. 10).

In light of the foregoing, the Court **ADOPTS** Magistrate Judge Wilkerson's Report and Recommendation (Doc. 76) in its entirety. The Plaintiff's Objections (Doc. 81), are therefore, **OVERRULED.** The Court finds that Plaintiff did exhaust his administrative remedies as to Defendant Moore, but he did not exhaust such remedies as to any other Defendant. As a result, Defendants Roger E. Walker, Jr., Alan Uctman, Al Martin, William Spiller, Brad Thomas, Unknown Party John Dough [sic], Russel Neipert, James R. Cheatham, C/O Anderson and Lt. Brookman are hereby **DISMISSED** *with prejudice* from this action, pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

Plaintiff's claims against Defendant Richard Moore, however, remain, and **SHALL** proceed to the merits. As a result, the parties have ninety (90) days, from the date of this Order, by which all discovery **SHALL** be completed. Dispositive motions, if any, **SHALL** be filed within thirty (30) days thereafter; that is, *on or before Monday, February 7, 2011.*

**IT IS SO ORDERED.**

DATED: 10/05/10

                                                s/ *G. Patrick Murphy*
                                                G. PATRICK MURPHY
                                                United States District Judge